UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SAVERY KANN, | : | |
| Plaintiff, | : | Case No.: 1:11-cv-03149 |
| -vs- | : | |
| NARY MANIVONG, | : | Judge Lewis A. Kaplan |
| and, | : | **PLAINTIFF'S FIRST AMENDED** |
| ALEXANDRIA HILFIGER, | : | **COMPLAINT** |
| and, | : | |
| NARY MANIVONG LLC, | : | |
| and, | : | |
| NAHM APPAREL LLC, | : | |
| Defendants. | : | |

## INTRODUCTION

1.      This is a civil action to hold Nary Manivong responsible for entering into a partnership with Savery Kann for a fashion-design business; promising Ms. Kann a position as Chief Executive Officer of the business; wrongfully inducing Ms. Kann to terminate her employment in California and move to New York City to undertake the partnership and her role as CEO; using Ms. Kann's work, ideas, and experience to develop the fashion-design business; and then reneging on the partnership and his promises to Ms. Kann in favor of a partnership solely with Alexandria Hilfiger negotiated without Ms. Kann's knowledge.  This civil action also seeks to hold Ms. Hilfiger responsible for her role in Mr. Manivong's decisions.  Ms. Kann, as a result of these actions, has been and continues to be substantially harmed both economically and

professionally and now brings this lawsuit for claims arising under New York state law.

## THE PARTIES

2.      Plaintiff Savery Kann (hereinafter "Ms. Kann") is a resident and citizen of California.   Presently, and at the time of filing the Complaint, Ms. Kann was and still is domiciled in California. *See* Affidavit of Savery Kann at ¶3. Ms. Kann's true, fixed home and principal establishment is in Long Beach, California at 1931 E. Poppy St., Long Beach, California 90805, and she has the intention of returning to this address. *See* Affidavit of Savery Kann at ¶4; *see also Starwood Hotels & Resorts Worldwide, Inc. v. Hilton Hotels Corp.*, 2010 U.S. Dist. LEXIS 71436 (S.D.N.Y. 2010) (holding that "a person's citizenship for diversity purposes is determined by his domicile: "the place where he has 'his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'") (citing *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)). Ms. Kann still maintains a California Driver's license, has paid resident taxes to California since 2004 and never to New York, and is not registered to vote in New York. *See* Affidavit of Savery Kann at ¶¶5-7.  Though Ms. Kann's present address is in New York City,[1] for purposes of diversity jurisdiction, she is domiciled in California, and therefore, diversity jurisdiction and subject matter jurisdiction exist.

3.      Defendant Nary Manivong (hereinafter "Mr. Manivong") is a resident and citizen of New York.  Mr. Manivong is an agent of Nary Manivong LLC and NAHM Apparel LLC and has the ability to make decisions and bind both entities to those decisions.

4.      Defendant Alexandria Hilfiger (hereinafter "Ms. Hilfiger") is a resident and citizen of New York.  Ms. Hilfiger is an agent of NAHM Apparel LLC and has the ability to make decisions and bind the entity to those decisions.

---

[1] At the time of filing the complaint Ms. Kann listed her temporary New York address, but has no intent on remaining at that address.

5.     Defendant Nary Manivong LLC is a domestic limited liability company organized under the laws of New York, with its principal place of business in the state of New York.

6.     Defendant NAHM Apparel LLC (hereinafter "NAHM") is a domestic limited liability company organized under the laws of New York, with its principal place of business in the state of New York.

**JURISDICTION**

7.     This Court has personal jurisdiction over all Defendants because they are residents of the State of New York and all Defendants otherwise purposefully avail themselves of the privilege of conducting business in New York.

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). Diversity jurisdiction exists under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and this controversy is between citizens of different states.  As set forth above and in the Affidavit of Savery Kann, Ms. Kann is domiciled in California, and consistent with federal case law in this District and the Second Circuit, domicile is determined by "the place where [a person] has 'his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" *Starwood Hotels & Resorts Worldwide, Inc. v. Hilton Hotels Corp.*, 2010 U.S. Dist. LEXIS 71436 (S.D.N.Y. 2010) (citing *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)).  While Ms. Kann is presently absent from her fixed home and has a tentative New York address, she has the intention of returning to California at 1931 E. Poppy St., Long Beach, California 90805.  Defendants are citizens of New York, and given the diversity of the parties, this Court has subject matter jurisdiction over this action.

## VENUE

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), and because the events, acts, and omissions giving rise to plaintiff's claims occurred in this district.

## STATEMENT OF FACTS

10.     Ms. Kann repeats and incorporates by reference all paragraphs set forth above as if fully set forth herein.

11.     On or about September 1, 2010, Mr. Manivong approached Ms. Kann and proposed that she join his start-up fashion-design business (hereinafter the "Company") as his partner.

12.     During the month of September 2010, Mr. Manivong and Ms. Kann negotiated the terms of their partnership.

13.     As a result of these negotiations, Mr. Manivong and Ms. Kann entered into a partnership recognized under New York law.

14.     Subsequently, the two collaborated together in their newfound partnership and worked to build the Company's business.   The following are just a few examples of their relationship as partners:

   a.   Mr. Manivong and Ms. Kann discussed operating the Company under the formal entity Nary Manivong, LLC;

   b.   Mr. Manivong and Ms. Kann agreed that they would both be members of Nary Manivong LLC;

   c.   Mr. Manivong and Ms. Kann agreed that Mr. Manivong would be President and Creative Director of Nary Manivong, LLC;

   d.   Mr. Manivong and Ms. Kann agreed that Ms. Kann would be Chief Executive

4

Officer ("CEO") of Nary Manivong LLC;

   e.   Mr. Manivong agreed that Ms. Kann would be CEO, at a minimum, for a guaranteed period of 3 years and at an annual salary of $75,000;

   f.   Mr. Manivong and Ms. Kann negotiated their respective ownership interests in Nary Manivong LLC, which would include a share of profits and losses for each of them;

   g.   Mr. Manivong and Ms. Kann worked together on the terms of the operating agreement for Navy Manivong LLC;

   h.   Mr. Manivong and Ms. Kann worked on a written partnership agreement that would memorialize the terms of their partnership;

   i.   Mr. Manivong and Ms. Kann collaborated on securing investors;

   j.   Mr. Manivong and Ms. Kann collaborated on the business plan for the Company;

   k.   Mr. Manivong collaborated with Ms. Kann on using her contacts to secure and set up meetings with potential vendors/clients to market his fashion line;

   l.   Mr. Manivong provided Ms. Kann with her own e-mail account at narymanivong.com;

   m.   Mr. Manivong provided Ms. Kann with access to the Company's business banking account; and

   n.   Ms. Kann worked with Mr. Manivong on various other tasks involved in the Company.

15.    Ms. Kann even referred to Mr. Manivong as her "partner" in their written communications, a characterization to which Mr. Manivong never objected.

16.    Mr. Manivong, in his discussions with Ms. Kann, even referred to the Company

as "our venture," a characterization to which Ms. Kann never objected.

17.    On or about September 3, 2010, Ms. Kann flew to New York City to meet with Mr. Manivong regarding their partnership and regarding Ms. Kann's role as CEO of Nary Manivong LLC.

18.    At this meeting, Ms. Kann was informed by Mr. Manivong that Ms. Hilfiger would also be involved in the Company.

19.    Subsequently, Ms. Hilfiger became a partner in the existing partnership between Mr. Manivong and Ms. Kann.

20.    On or about September 21, 2010, Ms. Kann flew to Philadelphia to attend Mr. Manivong's fashion show and to learn more about the fashion line being developed as the Company's product.

21.    In Philadelphia, Mr. Manivong requested that Ms. Kann move to New York to help him run the Company, both as his partner and in her role as CEO of Nary Manivong LLC.

22.    During the months of September and October of 2010, and as further evidence of her partnership with Mr. Manivong, Ms. Kann provided Mr. Manivong with capital contributions for the Company and/or for Mr. Manivong's business and/or personal expenses related to Company business:

a.    On or about September 18, 2010, Ms. Kann provided Mr. Manivong approximately $400.00 for a flight from San Francisco to Los Angeles to New York.  Mr. Manivong agreed to repay Ms. Kann within one (1) week.

b.    While in Los Angeles, Mr. Manivong and Ms. Kann discussed and developed their business plan as partners and the business plan for Nary Manivong LLC, and Mr. Manivong used this opportunity to try and find prospective vendors/clients to

market his fashion line.

c.  On or around September 18, 2010, Ms. Kann provided Mr. Manivong an additional $100.00 for personal and/or business expenditures while in Los Angeles. Mr. Manivong agreed to repay Ms. Kann within one (1) week.

d.  On or about October 7, 2010, Ms. Kann invested $500.00 in capital in Nary Manivong LLC.  Mr. Manivong agreed to repay the investment within one (1) week.

e.  Mr. Manivong was aware that he agreed to repay this capital.  On October 7, 2010, Mr. Manivong stated in a text message that he would repay the $500 investment.

23.    On or about October 4, 2010, Mr. Manivong and/or Ms. Hilfiger told Ms. Kann that she must move to New York City to help them launch the Company.

24.    However, Mr. Manivong and/or Ms. Hilfiger told Ms. Kann that the Company would cease operations under Nary Manivong LLC and that the Company would use a new entity entitled NAHM Apparel LLC.

25.    Mr. Manivong and/or Ms. Hilfiger also told Ms. Kann that her position with the Company for a guaranteed period of 3 years was unaltered by this name change for the formal entity conducting the Company's business.

26.    However, nothing led Ms. Kann to believe that she was being frozen out of her then-established partnership with Mr. Manivong and/or Ms. Hilfiger, or that she would not be included as a part of the Company.

27.    On December 4, 2010, and in reliance on Mr. Manivong and/or Ms. Hilfiger's representations of inclusion in the Company and their agreement to a guaranteed 3-year position

as CEO, Ms. Kann moved to New York City.

28.     Between October of 2010 and January of 2011, Ms. Kann attempted to contact Mr. Manivong numerous times about the start-up capital she provided him, about their partnership, and generally about her responsibilities with the Company.

29.     However, Mr. Manivong on numerous occasions made himself unavailable, was non-responsive, and/or was evasive to Ms. Kann's emails, text messages, and voicemails.

30.     Based upon Mr. Manivong's actions, it subsequently became apparent that Mr. Manivong and Ms. Hilfiger were not acting in good faith, that they had no intention of including Ms. Kann in the Company despite their representations, nor did they have any intention of honoring their partnership with Ms. Kann, of honoring Ms. Kann's position as CEO for a guaranteed period of 3 years, and/or of honoring Mr. Manivong's obligation to repay Ms. Kann the capital contributions she provided him.

31.     As a result, and despite their representations to the contrary, Mr. Manivong and Ms. Hilfiger had circumvented Ms. Kann and excluded her from the partnership and the Company.

32.     Despite their representations to the contrary, Mr. Manivong and Ms. Hilfiger still have not made any good faith attempts to now include Ms. Kann in the partnership or the Company.

33.     In fact, up to the date of this Complaint, numerous press releases have been published indicating that Mr. Manivong and Ms. Hilfiger intend to move forward on their partnership and the Company without Ms. Kann.

34.     Meanwhile, during this entire time, Mr. Manivong and Ms. Hilfiger never provided Ms. Kann with any notice or communication indicating that she is not a member of the

partnership or the Company.

35.    During the months of September of 2010 through December of 2010, Ms. Kann incurred approximately $1,800.00 in out-of-pocket expenses from her trips to New York City related to the Company.

36.    Ms. Kann incurred approximately $3,000.00 in moving expenses when relocating to New York in reliance on the representations Mr. Manivong and Ms. Hilfiger, who were her partners, and related to her 3-year position as CEO of the Company.

37.    Ms. Kann incurred approximately $15,000.00 in debt for living-expense loans she incurred in order to live in New York in reliance on the representations Mr. Manivong and Ms. Hilfiger, her partners, and in reliance of Mr. Manivong's guarantee of 3 years as CEO of the Company.

38.    Ms. Kann has incurred and will continue to incur significant loss of income and damage to her professional development due to leaving her job in Los Angeles, California where she was a Real Estate Executive Assistant, all in reliance on the promised inclusion in the partnership and the Company.

39.    But for Defendants' wrongful actions against Ms. Kann, Defendants would not be reaping the benefits of the partnership and the Company, which upon information and belief is generating revenue and has prominent investors such as Mr. Tommy Hilfiger who have contributed capital to the Company.  Pursuant to Ms. Kann's claims herein, she is entitled to a significant percentage of said revenues and investment capital.

## FIRST CAUSE OF ACTION

### BREACH OF A PARTNER'S DUTY TO SHARE PROFITS

40.    Ms. Kann repeats and incorporates by reference all paragraphs set forth above as

if fully set forth herein.

41.    Ms. Kann was a partner with Mr. Manivong and/or Ms. Hilfiger in a partnership recognized under New York law.

42.    As set forth herein, Mr. Manivong and/or Ms. Hilfiger have failed to pay and account to Ms. Kann for her ratable share of profits from the partnership's operations under Nary Manivong LLC and/or NAHM.  Accordingly, Mr. Manivong and/or Ms. Hilfiger have breached their duty as partners to share the profits of the partnership in violation of N.Y. P'SHIP LAW § 40(1).

43.    As a result Mr. Manivong and/or Ms. Hilfiger's breaches, Ms. Kann has been, and continues to be, damaged.

44.    Accordingly, Ms. Kann is entitled to an award of compensatory damages in an amount to be determined at the trial.

45.    In light of the malicious, intentional and/or willful nature of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann is also entitled punitive damages in an amount to be determined at trial.

46.    In light of the malicious, intentional and/or willful nature of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann is also entitled to her attorneys' fees incurred in pursuing this cause of action.

## SECOND CAUSE OF ACTION

### BREACH OF A PARTNER'S DUTY TO RENDER INFORMATION

47.    Ms. Kann repeats and incorporates by reference all paragraphs set forth above as if fully set forth herein.

48.    Ms. Kann was a partner of Mr. Manivong and/or Ms. Hilfiger in a partnership

recognized under New York law.

49.    As set forth herein, Mr. Manivong and/or Ms. Hilfiger have ignored Ms. Kann's demands to render true and full information of all things affecting the partnership, including but not limited to the management and accounting of funds.  Accordingly, Mr. Manivong and/or Ms. Hilfiger have breached their duty as partners to render information concerning the partnership to Ms. Kann in violation of N.Y. P'SHIP LAW § 42 and to permit Ms. Kann to share in equal management of the partnership in violation of N.Y. P'SHIP LAW § 40(5).

50.    As a result Mr. Manivong and/or Ms. Hilfiger's breaches, Ms. Kann has been, and continues to be, damaged.

51.    Accordingly, Ms. Kann is entitled to an award of compensatory damages in an amount to be determined at the trial.

52.    In light of the malicious, intentional and/or willful nature of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann is also entitled punitive damages in an amount to be determined at trial.

53.    In light of the malicious, intentional and/or willful nature of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann is also entitled to her attorneys' fees incurred in pursuing this cause of action.

## THIRD CAUSE OF ACTION

### BREACH OF A PARTNER'S DUTY TO
### PAY INTEREST ON, AND REPAY, CERTAIN CAPITAL CONTRIBUTIONS

54.    Ms. Kann repeats and incorporates by reference all paragraphs set forth above as if fully set forth herein.

55.    Ms. Kann was a partner of Mr. Manivong and/or Ms. Hilfiger in a partnership recognized under New York law.

11

56.     As set forth herein, Mr. Manivong and/or Ms. Hilfiger have breached their duties as partners by failing to repay Ms. Kann the capital contributions set forth in Paragraph 22 of the Complaint and/or to pay interest on those capital contributions in violation of N.Y. P'SHIP LAW §§ 40(1), 40(3), and 40(4).

57.     As a result Mr. Manivong and/or Ms. Hilfiger's breaches, Ms. Kann has been, and continues to be, damaged.

58.     Accordingly, Ms. Kann is entitled to an award of compensatory damages in an amount to be determined at the trial.

59.     In light of the malicious, intentional and/or willful nature of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann is also entitled punitive damages in an amount to be determined at trial.

60.     In light of the malicious, intentional and/or willful nature of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann is also entitled to her attorneys' fees incurred in pursuing this cause of action.

## FOURTH CAUSE OF ACTION

### BREACH OF A PARTNER'S FIDUCIARY DUTY

61.     Ms. Kann repeats and incorporates by reference all paragraphs set forth above as if fully set forth herein.

62.     Ms. Kann was a partner with Mr. Manivong and/or Ms. Hilfiger in a partnership recognized under New York law.

63.     As a result, Mr. Manivong and/or Ms. Hilfiger owed Ms. Kann a fiduciary duty that exists independently from any contractual duties that Ms. Kann, Mr. Manivong, and/or Ms. Hilfiger may owe one another.

12

64.     As set forth in this Complaint, Mr. Manivong and/or Ms. Hilfiger have committed various acts in breach of their fiduciary duties owed to Ms. Kann.

65.     As a result Mr. Manivong and/or Ms. Hilfiger's breaches, Ms. Kann has been, and continues to be, damaged.

66.     Accordingly, Ms. Kann is entitled to an award of compensatory damages in an amount to be determined at the trial.

67.     In light of the malicious, intentional and/or willful nature of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann is also entitled punitive damages in an amount to be determined at trial.

68.     In light of the malicious, intentional and/or willful nature of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann is also entitled to her attorneys' fees incurred in pursuing this cause of action.

## FIFTH CAUSE OF ACTION

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND/OR TORT OF BAD FAITH

69.     Ms. Kann repeats and incorporates by reference all paragraphs set forth above as if fully set forth herein.

70.     In addition to the representations and covenants that Mr. Manivong and/or Ms. Hilfiger made as a part of their partnership agreement and/or other agreements with Ms. Kann, those agreements also contain implied covenants of good faith and fair dealing on the part of Mr. Manivong and/or Ms. Hilfiger.

71.     Mr. Manivong and/or Ms. Hilfiger materially breached the implied covenants of good faith and fair dealing with Ms. Kann by:

  i. Inducing Ms. Kann to quit her current job in Los Angeles, California.

13

ii.   Inducing Ms. Kann to move to New York City.

iii.   Secretly negotiating a new business venture with Alexandria Hilfiger and failing to include Ms. Kann.

72.   As a direct and proximate result of Mr. Manivong and/or Ms. Hilfiger's material breaches of the implied covenants of good faith and fair dealing, as set forth above, Ms. Kann has sustained damages.

73.   Mr. Manivong and/or Ms. Hilfiger and Ms. Kann occupy a "special relationship," which makes tort damages applicable to this cause of action. Namely, Mr. Manivong and/or Ms. Hilfiger were partners with Ms. Kann under New York law and/or owed Ms. Kann a fiduciary duty.

74.   As a result Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann has been, and continues to be, damaged.

75.   Accordingly, Ms. Kann is entitled to an award of compensatory damages in an amount to be determined at the trial.

76.   In light of the malicious, intentional and/or willful nature of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann is also entitled punitive damages in an amount to be determined at trial.

77.   In light of the malicious, intentional and/or willful nature of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann is also entitled to her attorneys' fees incurred in pursuing this cause of action.

## SIXTH CAUSE OF ACTION

### EQUITABLE ESTOPPEL
### BASED UPON PARTNERSHIP AGREEMENT

78.   Ms. Kann repeats and incorporates by reference all paragraphs set forth above as

if fully set forth herein.

79.     Mr. Manivong and/or Ms. Hilfiger, individually, and/or acting on behalf of the Company (including, without limitation, its various formal entities used such as Nary Manivong, LLC, NAHM, and/or any partnerships recognized under New York law), and through their words, actions, inactions constituting a concealment of facts and/or a false misrepresentation, and other conduct, induced and caused Ms. Kann to believe that Mr. Manivong and/or Ms. Hilfiger would honor their partnership with Ms. Kann.

80.     Ms. Kann relied prejudicially on Mr. Manivong and/or Ms. Hilfiger's words, actions, inactions constituting a concealment of facts and/or a false misrepresentation and other conduct in that Ms. Kann, based on such reliance, changed her position in such a way as to suffer injury.

81.     Mr. Manivong and/or Ms. Hilfiger knew or should have known that Ms. Kann would rely on their words, actions, inactions constituting a concealment of facts and/or a false misrepresentation and other conduct, and Mr. Manivong and/or Ms. Hilfiger knew or should have known that Ms. Kann would detrimentally change her position in reliance on their words, actions, inactions constituting a concealment of facts and/or a false misrepresentation and other conduct evidencing the existence of an agreement between the parties.

82.     As a result of the foregoing, Mr. Manivong and/or Ms. Hilfiger are equitably estopped and absolutely precluded from denying the existence or enforceability of a partnership agreement with Ms. Kann.

83.     As a result Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann has been, and continues to be, damaged.

84.     Accordingly, Ms. Kann is entitled to an award of compensatory damages in an amount to be determined at the trial.

85.     In light of the malicious, intentional and/or willful nature of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann is also entitled punitive damages in an amount to be determined at trial.

86.     In light of the malicious, intentional and/or willful nature of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann is also entitled to her attorneys' fees incurred in pursuing this cause of action.

## SEVENTH CAUSE OF ACTION

### FRAUDULENT INDUCEMENT
### BASED UPON PARTNERSHIP AGREEMENT

87.     Ms. Kann repeats and incorporates by reference all paragraphs set forth above as if fully set forth herein.

88.     To materially induce Ms. Kann to move to New York City, Mr. Manivong and/or Ms. Hilfiger purposefully, falsely and fraudulently misrepresented that they would, among other things, honor their partnership with Ms. Kann.  Specifically:

    a. On October 4, 2010, Mr. Manivong sent a text message to Ms. Kann fraudulently stating "Ally and I agree we would like to have you . . . Move here!!!!!" See Exhibit A.

89.     Defendants never intended to honor their partnership with Ms. Kann.

90.     Mr. Manivong and/or Ms. Hilfiger made each of the foregoing misrepresentations with knowledge of their falsity and with the intent and for the purpose of defrauding Ms. Kann.

91.     Ms. Kann actually and justifiably relied on the misrepresentations and omissions of Mr. Manivong and/or Ms. Hilfiger set forth above in promising to honor Ms. Kann's

partnership with them.

92.    Ms. Kann, believing in the truth of Mr. Manivong and/or Ms. Hilfiger's statements and representations, and in reliance upon those statements and representations, was thereby induced to move to New York City, which Ms. Kann would not have done had she known the truth of the matter.

93.    As a result Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann has been, and continues to be, damaged.

94.    Accordingly, Ms. Kann is entitled to an award of compensatory damages in an amount to be determined at the trial.

95.    In light of the malicious, intentional and/or willful nature of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann is also entitled punitive damages in an amount to be determined at trial.

96.    In light of the malicious, intentional and/or willful nature of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann is also entitled to her attorneys' fees incurred in pursuing this cause of action.

## EIGHTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

97.    Ms. Kann repeats and incorporates by reference all paragraphs set forth above as if fully set forth herein.

98.    Mr. Manivong and/or Ms. Hilfiger had a "special relationship" with Ms. Kann as a result of their partnership with Ms. Kann recognized under New York law and/or as a result of the fiduciary duties they owed Ms. Kann.

99.    Mr. Manivong and/or Ms. Hilfiger had a duty as a result of their special relationship with Ms. Kann to give correct information.

100.    Mr. Manivong and/or Ms. Hilfiger made false representations that Mr. Manivong and/or Ms. Hilfiger knew, or should have known, were incorrect.

101.    The information supplied in the representations was known by Mr. Manivong and/or Ms. Hilfiger to be desired by Ms. Kann for a serious purpose.

102.    Ms. Kann intended to rely and act upon the information and representations supplied.

103.    Ms. Kann reasonably relied upon those representations and the information to her detriment.

104.    As a result Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann has been, and continues to be, damaged.

105.    Accordingly, Ms. Kann is entitled to an award of compensatory damages in an amount to be determined at the trial.

106.    In light of the malicious, intentional and/or willful nature of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann is also entitled punitive damages in an amount to be determined at trial.

107.    In light of the malicious, intentional and/or willful nature of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann is also entitled to her attorneys' fees incurred in pursuing this cause of action.

## NINTH CAUSE OF ACTION

### FRAUDULENT MISREPRESENTATION

108.    Ms. Kann repeats and incorporates by reference all paragraphs set forth above as

if fully set forth herein.

109.    Mr. Manivong and Ms. Hilfiger knowingly and fraudulently induced Ms. Kann into quitting her job in Los Angeles, California; into moving to New York City; and into providing Mr. Manivong with start-up capital by making misrepresentations of material fact and/or failing to disclose material facts, despite having a duty to do so, such that the Defendants' representations were false representations.   The specific fraudulent misrepresentations are the following:

   a.  On October 4, 2010, Mr. Manivong sent a text message to Ms. Kann fraudulently stating "Ally and I agree we would like to have you . . . Move here!!!!!" See Exhibit A.

   b.  On or about October 4, 2010, Mr. Manivong and Ms. Hilfiger fraudulently told Ms. Kann that she must move to New York City to help them launch the Company.

   c.  On October 4, 2010, Mr. Manivong and Ms. Hilfiger fraudulently told Ms. Kann that her agreement to act as CEO of the Company for a guaranteed period of 3 years at $75,000 annually would be honored if she moved to New York City.

   d.  On or about September 18, 2010, Mr. Manivong fraudulently agreed to repay within one (1) week approximately $400.00 in capital contributions made by Ms. Kann despite having no intention do to so.

   e.  On or around September 18, 2010, Mr. Manivong agreed to repay within one (1) week approximately $100.00 in capital contributions made by Ms. Kann despite having no intention do to so.

   f.  On or about October 7, 2010, Mr. Manivong agreed to repay Mr. Manivong

within one (1) week approximately $500.00 in capital contributions made by Ms. Kann.

110.    Mr. Manivong and/or Ms. Hilfiger knew at the time they made those representations that they were factually false and that they had no intention of abiding by them as evidenced by the fact that they entered into agreements and/or a separate partnership without including Ms. Kann shortly after inducing her to quit her job, inducing her to move to New York City, and requesting that she provide start-up capital to Mr. Manivong.

111.    Ms. Kann relied to her detriment upon Mr. Manivong and/or Ms. Hilfiger's failure to disclose material facts, their omissions of material facts, promises, assurances, and representations by, among other things, incurring significant costs and expenses to help found and promote the Company.

112.    At all times, Mr. Manivong and/or Ms. Hilfiger knew that Ms. Kann was reasonably relying upon their representations and/or omissions of material facts and foregoing other options and opportunities due to her commitment to Defendants under their Agreement.

113.    As a result of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann has been, and continues to be, damaged.

114.    Accordingly, Ms. Kann is entitled to an award of compensatory damages in an amount to be determined at the trial.

115.    In light of the malicious, intentional and/or willful nature of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann is also entitled punitive damages in an amount to be determined at trial.

116.    In light of the malicious, intentional and/or willful nature of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann is also entitled to her attorneys' fees incurred in pursuing this cause of action.

### TENTH CAUSE OF ACTION

### BREACH OF A CONTRACT OF EMPLOYMENT FOR A DEFINITE PERIOD

117.    Ms. Kann repeats and incorporates by reference all paragraphs set forth above as if fully set forth herein.

118.    Mr. Manivong, individually, and/or on behalf of the Company (including, without limitation, its various formal entities used such as Nary Manivong, LLC, NAHM, and/or any partnerships recognized under New York law), entered into a contract of employment for a guaranteed period of 3 years with Ms. Kann.

119.    The terms of this contract are contained in the writings attached as Exhibits A and B to this Complaint.

120.    Mr. Manivong and/or Ms. Hilfiger, individually, and/or acting on behalf of the Company (including, without limitation, its various formal entities used for the Company such as Nary Manivong, LLC, NAHM, and/or any partnerships recognized under New York law), breached the contract of employment by, among other things, failing to pay Ms. Kann the agreed-upon annual salary of $75,000 for 3 years.

121.    As a result of these breaches of the contract of employment, Ms. Kann has been, and continues to be, damaged.

122.    Accordingly, Ms. Kann is entitled to an award of compensatory damages in an amount to be determined at the trial.

## ELEVENTH CAUSE OF ACTION

### PROMISSORY ESTOPPEL
### BASED UPON EMPLOYMENT FOR A DEFINITE PERIOD

123.   Ms. Kann repeats and incorporates by reference all paragraphs set forth above as if fully set forth herein.

124.   As described in detail above, Mr. Manivong and/or Ms. Hilfiger, individually, and/or acting on behalf of the Company (including, without limitation, its various formal entities used such as Nary Manivong, LLC, NAHM, and/or any partnerships recognized under New York law), made unambiguous and false promises to Ms. Kann that she would be an employee of them individually and/or the Company for a guaranteed period of three (3) years and would be paid an annual salary of $75,000.

125.   At all times relevant hereto, Mr. Manivong and/or Ms. Hilfiger knew that Ms. Kann was reasonably relying upon their promises and foregoing other clients and opportunities due to a commitment to the Company.

126.   As a result, Ms. Kann reasonably relied to her detriment upon the promises, assurances and representations of Mr. Manivong and/or Ms. Hilfiger by, among other things, terminating her employment in California and the income and benefits it provided, incurring expenses and by foregoing other business opportunities, incurring travel expenses to and from New York City, and incurring moving expenses by relocating to New York City.

127.   Based upon Ms. Kann's reasonable reliance on the foregoing representations, the Defendants are estopped from repudiating and/or denying the terms of the employment agreement.

128.   As a result of her reasonable and detrimental reliance, Ms. Kann has been, and continues to be damaged.

22

129.    Accordingly, Ms. Kann is entitled to an award of compensatory damages in an amount to be determined at the trial.

### TWELFTH CAUSE OF ACTION

**EQUITABLE ESTOPPEL**
**BASED UPON EMPLOYMENT FOR A DEFINITE PERIOD**

130.    Ms. Kann repeats and incorporates by reference all paragraphs set forth above as if fully set forth herein.

131.    Mr. Manivong and/or Ms. Hilfiger, individually, and/or acting on behalf of the Company (including, without limitation, its various formal entities used such as Nary Manivong, LLC, NAHM, and/or any partnerships recognized under New York law), and through their words, actions, inactions constituting a concealment of facts and/or a false misrepresentation, and other conduct, induced and caused Ms. Kann to believe that she would be an employee of them individually and/or the Company for a guaranteed period of three (3) years and would be paid an annual salary of $75,000.

132.    Ms. Kann relied prejudicially on Mr. Manivong and/or Ms. Hilfiger's words, actions, inactions constituting a concealment of facts and/or a false misrepresentation and other conduct in that Ms. Kann, based on such reliance, changed her position in such a way as to suffer injury.

133.    Mr. Manivong and/or Ms. Hilfiger knew or should have known that Ms. Kann would rely on their words, actions, inactions constituting a concealment of facts and/or a false misrepresentation and other conduct, and Mr. Manivong and/or Ms. Hilfiger knew or should have known that Ms. Kann would detrimentally change her position in reliance on their words, actions, inactions constituting a concealment of facts and/or a false misrepresentation and other conduct evidencing the existence of an agreement between the parties.

134.    As a result of the foregoing, Defendants are equitably estopped and absolutely precluded from denying the existence or enforceability of an employment agreement with Ms. Kann.

135.    As a result Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann has been, and continues to be, damaged.

136.    Accordingly, Ms. Kann is entitled to an award of compensatory damages in an amount to be determined at the trial.

**THIRTEENTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**
**BASED UPON EMPLOYMENT FOR A DEFINITE PERIOD**

137.    Ms. Kann repeats and incorporates by reference all paragraphs set forth above as if fully set forth herein.

138.    Ms. Kann repeats and incorporates by reference all paragraphs set forth above as if fully set forth herein.

139.    Defendants received the benefit of Ms. Kann's work, experience, and ideas because of her role as an employee of Mr. Manivong and/or Ms. Hilfiger individually and/or the Company (including, without limitation, its various formal entities used such as Nary Manivong, LLC, NAHM, and/or any partnerships recognized under New York law), and in particular because of her role as CEO of Nary Manivong, LLC.

140.    Defendants' benefited and have been unjustly enriched by, and Ms. Kann has been wrongfully deprived of, this work, experience, and ideas.

141.    As a result Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann has been, and continues to be, damaged.

142.    Equity and good conscience require that Defendants pay restitution and damages

to Ms. Kann for their unjust enrichment in an amount to be determined at trial.

## FOURTEENTH CAUSE OF ACTION

### FRAUDULENT INDUCEMENT
### BASED UPON EMPLOYMENT FOR A DEFINITE PERIOD

143.    Ms. Kann repeats and incorporates by reference all paragraphs set forth above as if fully set forth herein.

144.    To materially induce Ms. Kann to move to New York City, Mr. Manivong and/or Ms. Hilfiger purposefully, falsely and fraudulently misrepresented that they would, among other things, provide Ms. Kann a position as the CEO of Nary Manivong LLC and/or NAHM for a guaranteed period of 3 years and at an annual salary of $75,000.  Specifically:

    a.  On October 4, 2010, Mr. Manivong sent a text message to Ms. Kann fraudulently stating "Ally and I agree we would like to have you . . . Move here!!!!!" See Exhibit A.

    b.  On or about October 4, 2010, Mr. Manivong and Ms. Hilfiger fraudulently told Ms. Kann that she must move to New York City to help them launch the Company.

    c.  On October 4, 2010, Mr. Manivong and Ms. Hilfiger fraudulently told Ms. Kann that her agreement to act as CEO of the Company for a guaranteed period of 3 years at $75,000 annually would be honored if she moved to New York City.

145.    Defendants never intended to honor Ms. Kann's position as the CEO of Nary Manivong LLC and/or NAHM.

146.    Mr. Manivong and/or Ms. Hilfiger made each of the foregoing misrepresentations with knowledge of their falsity and with the intent and for the purpose of defrauding Ms. Kann.

147.    Ms. Kann actually and justifiably relied on the misrepresentations and omissions

of Mr. Manivong and/or Ms. Hilfiger set forth above in promising Ms. Kann her position as the CEO of Nary Manivong LLC and/or NAHM.

148.    Ms. Kann, believing in the truth of Mr. Manivong and/or Ms. Hilfiger's statements and representations, and in reliance upon those statements and representations, was thereby induced to move to New York City, which Ms. Kann would not have done had she known the truth of the matter.

149.    As a result Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann has been, and continues to be, damaged.

150.    As a result of the foregoing, Ms. Kann has been damaged in a sum exceeding $500,000.00, together with legal interest, costs and expenses, the precise amount to be proven at trial, including without limitation all consequential and incidental damages related thereto and is further entitled to exemplary damages in a sum in excess of $500,000.00 as the conduct of Defendants demonstrates reprehensible motives and such wanton dishonesty as to imply a criminal indifference to civil obligations.

151.    Accordingly, Ms. Kann is entitled to an award of compensatory damages in an amount to be determined at the trial.

152.    In light of the malicious, intentional and/or willful nature of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann is also entitled punitive damages in an amount to be determined at trial.

153.    In light of the malicious, intentional and/or willful nature of Mr. Manivong and/or Ms. Hilfiger's actions, Ms. Kann is also entitled to her attorneys' fees incurred in pursuing this cause of action.

## FIFTEENTH CAUSE OF ACTION

### BREACH OF CONTRACT BASED UPON
### CAPITAL CONTRIBUTIONS PROVIDED TO MR. MANIVONG

154.    Ms. Kann repeats and incorporates by reference all paragraphs set forth above as if fully set forth herein.

155.    Mr. Manivong and Ms. Kann entered into contracts by which she personally provided him capital in an amount more fully to be determined at trial for a period not to exceed one (1) year and for purposes of the start-up of the Company.

156.    As discussed with more particularity above, as part of these contracts, Mr. Manivong made certain representations regarding his ability to repay Ms. Kann.

157.    Mr. Manivong breached these contracts with Ms. Kann by failing to repay the monies he received from her.

158.    As a result of these breaches of the contracts, Ms. Kann has been, and continues to be, damaged in an amount to be determined at trial.

## SIXTEENTH CAUSE OF ACTION

### UNJUST ENRICHMENT BASED UPON
### CAPITAL CONTRIBUTIONS PROVIDED TO MR. MANIVONG

159.    Ms. Kann repeats and incorporates by reference all paragraphs set forth above as if fully set forth herein.

160.    Mr. Manivong received all capital contributions for the Company's start-up that he asked Ms. Kann to personally provide him.

161.    Mr. Manivong has personally benefitted and been unjustly enriched by and Ms. Kann has been wrongfully deprived of the funds that she provided to him as part of the contract on the capital contributions, the amount of which is set forth above.

162.    Equity and good conscience require that Mr. Manivong pay restitution together with damages in an amount to be determined at trial.

## SEVENTEENTH CAUSE OF ACTION

### CONVERSION BASED UPON
### CAPITAL CONTRIBUTIONS PROVIDED TO MR. MANIVONG

163.    Ms. Kann repeats and incorporates by reference all paragraphs set forth above as if fully set forth herein.

164.    Mr. Manivong intentionally and wrongfully obtained and kept without permission, Ms. Kann's property.

165.    Mr. Manivong knew, or should have known, that he had no right to possess or keep Ms. Kann's money.  Nevertheless, in conscious disregard of Ms. Kann's legal rights and property interest (and despite Ms. Kann's repeated requests for a return of the property), Mr. Manivong chose to obtain, keep, and use Ms. Kann's property for his own financial benefit.

166.    At all relevant times Mr. Manivong acted with malice and conscious disregard of Ms. Kann's legal rights and property interests.   By wrongfully holding on to Ms. Kann's property, Mr. Manivong converted Ms. Kann's property.

167.    Mr. Manivong's refusal to return the money constitutes an intentional interference with Ms. Kann's ownership rights in that property, which deprived Ms. Kann of her right to possess that property.

168.    Mr. Manivong's actions have damages, and continue to damage, Ms. Kann.

169.    Accordingly, Ms. Kann is entitled to an award of compensatory damages in an amount to be determined at the trial.

170.    In light of the malicious, intentional and/or willful nature of Mr. Manivong's actions, Ms. Kann is also entitled punitive damages in an amount to be determined at trial.

171.    In light of the malicious, intentional and/or willful nature of Mr. Manivong's actions, Ms. Kann is also entitled to her attorneys' fees incurred in pursuing this cause of action.

## JURY DEMAND

172.    The Plaintiff demands a trial by jury as to all issues before the maximum amount of jurors allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands that this Honorable Court order relief as follows:

1.  Compensatory damages in an amount exceeding $75,000;

2.  Punitive damages in the amount to be determined at trial;

3.  Reasonable attorney's fees and costs of this action;

4.  Pre-judgment and post-judgment interest on any damages awarded;

5.  All other relief that this Court deems justified.

Respectfully submitted,

Avonte D. Campinha-Bacote (*Pro Hac Vice*)
Ashley D. Rutherford (*Pro Hac Vice* pending)
CAMPINHA-BACOTE & CHANG, LLC
341 South Third Street, Suite 200
Columbus, Ohio 43215
Telephone: (614) 453-4276
avonte.campinha-bacote@cbandchang.com
ashley.rutherford@cbandchang.com

*Attorneys for Plaintiff,*
Savery Kann

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of May, 2011, I filed the foregoing document electronically and via U.S. Mail with the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List.

Steven R. Gursky
65 East 55th Street
New York, NY 10022

*Attorney for Defendants*

Avonte D. Campinha-Bacote

30